# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket no. 2:12-cr-00044-NT |
| | ) |
| NICHOLAS F. EMOND, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF DECISION AND ORDER ON SENTENCE

On April 5, 2012, the Defendant, Nicholas Emond, entered a guilty plea to a single count of Providing False or Fictitious Information to a Federal Firearms Licensee in Acquiring a Firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). The issue before the Court is whether United States Sentencing Guideline § 2K2.1(a)(6) applies because the Defendant was a prohibited person when he committed the offense.

The Defendant challenges the Government's factual basis for the elevated base offense level and brings constitutional challenges under the Second and Fifth Amendments. He argues that § 922(g)(3) is unconstitutional under the Second Amendment facially and as applied to him, deprives him of his fundamental right to bear arms without due process of law, and is unconstitutionally vague. For the reasons that follow, the Court finds that the elevated base offense level applies. The Court also holds that § 922(g)(3) is facially constitutional, constitutional as applied to the Defendant, and not unconstitutionally vague.

## DISCUSSION

### A. Whether the Enhancement Applies

USSG § 2K2.1 applies to prohibited firearm transactions including 18 U.S.C. § 922(a)(6). Section 2K2.1(a)(6) sets the base offense level for prohibited firearm transactions at 14 "if the defendant (A) was a prohibited person at the time the defendant committed the instant offense . . . ." The sentencing guideline definition for "prohibited person" refers to any person described in 18 U.S.C. §§ 922(g) & 922(n). U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.3. Section 922(g)(3) makes it a crime for a person "who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" to possess a firearm.

The Government bears the burden of proving by a preponderance of the evidence that the Defendant engaged in (1) regular drug use, (2) for a long period of time, (3) proximate to or contemporaneous to the offense. *United States v. Caparotta,* 676 F.3d 213, 216 (1st Cir. 2012); *United States v. Marceau,* 554 F.3d 24, 30 (1st Cir. 2009). The First Circuit has explained that the term "unlawful user" in section 922(g)(3) "requires a 'temporal nexus between the gun possession and regular drug use.'" *Marceau*, 554 F.3d at 30 (citing *United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008)).[1] In making its determination of whether the

---

[1] The Code of Federal Regulations defines an unlawful user as:

A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance . . . . Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a

2

enhanced base offense level applies, "[a] sentencing court is entitled to rely on circumstantial evidence and draw plausible inferences therefrom." *Marceau*, 554 F.3d at 32 (citations omitted).

The Defendant faces sentencing on a charge that he induced Jessica Bolster to make a false statement to a federally licensed firearms dealer in connection with the purchase of a Ruger 9 mm semi-automatic pistol from the Kittery Trading Post on February 26, 2011. At a conference of counsel held on September 14, 2011, the Government and counsel for the Defendant stipulated that the record for purposes of the Court's determination of whether the Defendant was an unlawful user at the time of the offense is limited to the Revised Presentence Investigation Report and the Government's exhibits.

From the stipulated record, the Court finds that the Defendant admitted during an April 28, 2011 interview with an ATF agent that:

- he met Jessica Bolster (the mother of his friend) when he moved into her residence approximately two weeks prior to the straw purchase;

- he has been a user of illegal opiates since 2007;

- he and Jessica Bolster shared a dependence/addiction to heroin;

- he spent $8,000 on heroin in one week which Bolster and he used;

- he was unsure whether he had unlawfully used a controlled substance on the day of the straw purchase, but Bolster used heroin daily and had used heroin that day; and

---

controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time . . . .

27 C.F.R. § 478.11.

3

- because of his addictions, he was not ready to be a good father to his children.

Gov't Ex. 3. During a taped "recap" conducted after the interview on April 28, 2011, the Defendant stated: "I have a current issue with addiction. But at this point, sober – technically. I'm not using any street drugs and I'm suffering a great deal due to that too. But this point it's do or die man. Gotta give up the drugs or lose the most important things to me in my life and that's good people that care about me." Gov't Ex. 4.

The record includes a report of a proffer interview with Bolster conducted on January 3, 2012. In that interview, Bolster told an ATF agent that:

- the Defendant uses cocaine, opioids, and heroin;

- the Defendant misuses prescription drugs;

- she used heroin with the Defendant;

- the Defendant brought a "softball sized bag of heroin powder" to Bolster's residence 2-3 weeks before the straw purchase and gave Bolster about 3 grams of the powder;

- although she was high at the time, she believed that the Defendant snorted some of the heroin with her as she was using it; and

- she believed that she had seen the Defendant snort but not shoot heroin.

Gov't Ex. 1.

The record also includes a March 14, 2011 *ex parte* domestic violence petition from the mother of the Defendant's two children, Brittany Small. Gov't Ex. 2.

4

According to the petition, Small alleged at the hearing[2] that the Defendant had been using heroin since his release from prison one month prior. *Id*. The Revised Presentence Investigation Report confirms that on February 8, 2011, the Defendant was sentenced to twelve days for his conviction for resisting arrest. Revised Presentence Investigation Report ¶¶ 33-34.[3] The record also includes the resulting protection order, dated March 24, 2011, which states that the court found that the Defendant's conduct constituted a credible threat to Small because of "ongoing drug use." Gov't Ex. 2.

The Defendant points out that Bolster's own drug issues and Small's potential bias against her ex-boyfriend make them unreliable as witnesses. The Court finds, however, that their descriptions of the Defendant's drug use during the second half of February of 2011 corroborate each other and are corroborated by the Defendant's own admissions to the ATF agent in April of 2011.

By the stipulated exhibits, the Government has shown by a preponderance of evidence that the Defendant engaged in regular use of illegal drugs over a long period of time. While there is no direct evidence in the record of the Defendant's drug use on the day of the straw purchase, the evidence reasonably supports the inference that the Defendant was using heroin sufficiently proximate in time to the offense for the enhanced base offense level to apply. The Defendant claimed that he

---

[2] It is unclear from the record when the hearing occurred, but the Final Order of Protection was entered on March 24, 2011.
[3] Paragraph 7 of the Revised Presentence Investigation Report incorrectly reports that the Defendant admitted in an interview with an ATF agent that he used heroin daily, "including the day" of the gun purchase. The Defendant clarified at sentencing that he did not recall using on the day of the purchase, and the Government conceded that the ATF interview report reflects that the Defendant told the agent that *Bolster* used heroin daily, including the day of the purchase.

5

met Bolster only two weeks before the straw purchase and admitted that he had used heroin with her. Both the Defendant and Bolster spoke about using a large amount of heroin, which Bolster said occurred two to three weeks before the straw purchase. Small's allegations also pinpointed the Defendant's use of heroin as starting after his release from jail, which would have occurred sometime in mid-February of 2011, shortly before the straw purchase. The Defendant's own admission to the ATF agent that he was sober on April 28, 2011 but that he was suffering allows the Court to draw the inference that the Defendant was in withdrawal in April of 2011. There is sufficient evidence that the Defendant was using street drugs, specifically heroin, from mid-February into March of 2011.

The evidence suggests that the Defendant had "lost the power of self-control" and was "actively engaged" in drug use around the time of the straw purchase. *See Caparotta,* 676 F.3d at 220 (defendant's admission of regular use of marijuana within one month of possession of stolen firearms plus text messages seeking drugs three days before and after the date he stole firearms was "ample evidence for the district court to conclude that he was a 'prohibited person'"); *Marceau,* 554 F.3d at 30 (evidence established defendant was a "prohibited person" where defendant admitted regular marijuana use in the days before the robbery and that the robbery was the first step in a plan to sell the stolen firearms to get more money for drugs). The Court finds, by a preponderance of the evidence, that the Defendant was a prohibited person at the time that he committed the offense and concludes that the applicable base offense level is 14.

## B. Constitutional Challenges

Section 922(g)(3) prohibits unlawful drug users from possessing firearms, thereby directly implicating their Second Amendment right to keep and bear arms. Since the Defendant's base offense level is being elevated because he is an unlawful drug user who may not possess a firearm under § 922(g)(3), his Second Amendment right to keep and bear arms is indirectly implicated by his sentence.

### 1. Facial Challenge

The Defendant brings a facial constitutional challenge to § 922(g)(3), arguing that it deprives him of his right to bear arms and must survive strict scrutiny. The Second Amendment of the United States Constitution[4] establishes an individual, fundamental right to bear arms. *District of Columbia v. Heller*, 554 U.S. 570 (2008). In *Heller*, while holding that the Second Amendment confers an individual right to keep and bear arms, the Supreme Court also explained that the individual right to bear arms is not unlimited:

> From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

---

[4] "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II.

*Id.* at 625. In a footnote, the Court added: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 627 n.26.

The Defendant asks the Court to apply strict scrutiny to § 922(g)(3), which would require that the Government prove that § 922(g)(3) is narrowly tailored to a compelling state interest. However, the Defendant has provided no case law where a court has applied strict scrutiny to § 922(g)(3). The First Circuit has applied intermediate scrutiny to § 922(g)(9), which prohibits firearm possession by individuals convicted of domestic violence misdemeanors. *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011). The Fourth, Seventh, Eighth, and Ninth Circuits have all applied intermediate scrutiny to § 922(g)(3), requiring a substantial relation to an important government objective. *See United States v. Carter,* 669 F.3d 411 (4th Cir. 2011); *United States v. Yancey,* 621 F.3d 681 (7th Cir. 2010); *United States v. Seay*, 620 F.3d 919 (8th Cir. 2010); *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011); *cf. United States v. Richard*, 350 F. App'x 252 (10th Cir. 2009) (summarily upholding § 922(g)(3) without specifying a level of scrutiny).

The Fifth, Seventh, Eighth, Ninth, and Tenth Circuits have also all upheld § 922(g)(3) against Second Amendment challenges. *See United States v. Patterson,* 431 F.3d 832, 835-36 (5th Cir. 2005) (upholding § 922(g)(3)'s constitutionality under pre-*Heller* Fifth Circuit decision recognizing individual right to bear arms under Second Amendment); *Yancey*, 621 F.3d 681 at 687; *Seay*, 620 F.3d at 925; *Dugan*, 657 F.3d at 999-1000; *Richard*, 350 F. App'x at 260; *cf. Carter,* 669 F.3d at 421

(strongly suggesting that the Fourth Circuit will join other circuits upholding § 922(g)(3) but remanding to develop the record).

In *Yancey,* the Seventh Circuit, applying intermediate scrutiny, found that § 922(g)(3) is substantially related to an important governmental objective. It recognized that § 922(g)(3)'s broad objective of "suppressing armed violence" is "without doubt an important one." *Id.* at 684. The Seventh Circuit found that "habitual drug users, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms," and that "studies amply demonstrate the connection between chronic drug abuse and violent crime, and illuminate the nexus between Congress's attempt to keep firearms away from habitual drug abusers and its goal of reducing violent crime." *Id.* at 685-86 (citing significant academic research linking drug use and violence). The Seventh Circuit also noted that unlike a person with a felony conviction or a person who has been committed to a psychiatric hospital, a drug abuser may regain his ability to possess a firearm by not using drugs. *Id.* at 686-87.

In *Seay*, the Eighth Circuit agreed: "Nothing in [the defendant's] argument convinces us that we should depart company from *every* other court to examine § 922(g)(3) following *Heller*. Further, § 922(g)(3) has the same historical pedigree as other portions of § 922(g) which are repeatedly upheld by numerous courts since *Heller*." *Id.* at 925.

In *Dugan*, the Ninth Circuit held the same, explaining that:

> we see the same amount of danger in allowing habitual drug users to traffic in firearms as we see in allowing felons and mentally ill people

9

> to do so. Habitual drug users, like career criminals and the mentally ill, more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances.

*Id.* at 999.

The Court sees no reason to depart from these circuits' reasoning and conclusions. Preventing gun violence is an important government objective and the Defendant concedes as much in his Sentencing Memorandum. Def.'s Sentencing Mem. 8 (ECF No. 28). As each of the circuit courts upholding § 922(g)(3) have recognized, there are demonstrable links between unlawful drug use and violence. The Court is not persuaded by the Defendant's argument that § 922(g)(3) is overinclusive because it prohibits possession by unlawful drug users who do not pose a risk of gun violence and underinclusive because it does not prohibit possession by those who drink alcohol or use other impairing substances not covered by § 922(g)(3).

In *Carter*, the Fourth Circuit addressed and rejected this same argument. The Fourth Circuit held that § 922(g)(3) is not overinclusive because the Supreme Court made clear in *Heller* that some categorical prohibitions on gun possession are presumptively constitutional, and "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons." *Carter,* 669 F.3d at 420 (quoting *United States v. Skoein*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc)). The Fourth Circuit dismissed an underinclusivity objection to § 922(g)(3) as a disagreement with Congress's reasonable choice to link § 922(g)(3) to the Controlled Substances Act. *Id.* at 421.

At the sentencing hearing, the Government introduced studies and academic research which establish a connection between drug use and violent crime.[5] The studies submitted by the Government, the case law that addresses this question, the legislative history behind § 922(g)(3), and common sense support the conclusion that prohibiting unlawful drug users from possessing firearms is substantially related to the important government objective of reducing gun violence. And, as other circuits have noted, unlike § 922(g)'s prohibition of firearm possession by felons and those who have been committed because of mental illness, § 922(g)(3)'s prohibition on firearm possession by unlawful drug users is a temporary restriction that lasts only as long as the person continues using drugs.

### 2. As Applied Challenge

The Defendant also argues that applying § 922(g)(3) to him does not substantially serve an important government objective. The Court disagrees. The Defendant fits comfortably within the category of people that Congress wished to prevent from possessing firearms. There is undisputed evidence in the record that the Defendant has unlawfully used drugs since he was 14, including marijuana, prescription opiates, and heroin. By his own admission to the ATF agent, the Defendant has been struggling with drug addiction for years. The Defendant was convicted of unlawful trafficking in scheduled drugs in 2005.

---

[5]   Gov't Ex. 6, *Illicit Drug Use Among Persons Arrested for Serious Crimes,* The Nat'l Surv. On Drug Use and Health Report (Office of Applied Studies, Substance Abuse and Mental Health Administration), December 16, 2005; Gov't Ex. 7, Carrie B. Oser et al., *The Drugs-Violence Nexus Among Rural Felony Probationers*, 24 J. Interpersonal Violence 1285 (2009); Gov't Ex. 8, H. Virginia McCoy, Sarah E. Messiah & Zhinuan Yu, *Perpetrators, Victims, and Observers of Violence: Chronic and Non-Chronic Drug Users,* 16 J. Interpersonal Violence 890 (2001); Gov't Ex. 9, Lana Harrison & Joseph Gfroerer, *The Intersection of Drug Use and Criminal Behavior: Results from the National Household Survey on Drug Abuse*, 38 Crime & Delinquency 422 (1992).

Eight months after the straw purchase, the Defendant was in possession of a semi-automatic rifle that he could not recall purchasing because he was high on heroin at the time of purchase. The Defendant has ten prior adult criminal convictions, and numerous run-ins with police. Several of these convictions and incidents involved violence, including resisting arrest, assaults and stalking. As discussed earlier in this opinion, § 922(g)(3)'s objective is to keep guns out of the hands of individuals with diminished self-control and an increased risk of violent conduct. The Defendant's record of drug use and criminal conduct shows him to be such an individual.

### 3. Due Process Challenge

An individual may not be deprived of his fundamental right to bear and keep arms without due process of law.[6] *United States v. Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012).

> Although the right established in *Heller* is a qualified right, the right to possess arms (among those not properly disqualified) is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process. Ordinarily, to work a permanent or prolonged loss of a constitutional liberty or property interest, an adjudicatory hearing, including a right to offer and test evidence if facts are in dispute, is required.

*Id.* at 48. In *Rehlander*, the First Circuit held that § 922(g)(4), which prohibits a person who "has been committed to a mental institution" from possessing a firearm, could not include persons who had been hospitalized under Maine's emergency, *ex parte* procedure for involuntary psychiatric hospitalization. The First Circuit

---

[6] The Fifth Amendment provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend V.

12

concluded that this process provided insufficient process to permanently deprive a person of her Second Amendment rights. The First Circuit held that Maine's emergency procedure is procedurally inadequate because there is no pre-admission adversary hearing or pre-admission finding by an independent judicial officer, and the individual is not provided with counsel. *Id.* at 48-49. The First Circuit added that Maine's emergency procedure might be adequate if it resulted in only a temporary suspension of the right to bear arms pending further proceedings, or if the hospitalized person had a later opportunity to recover her Second Amendment rights. The First Circuit contrasted Maine's emergency procedure with Maine's involuntary commitment statute, which permits involuntary commitment after an adversarial hearing and provides the patient with counsel, the opportunity to testify, and the opportunity to call and cross-examine witnesses. *Id.* at 48.

The Defendant argues that his status as an "unlawful user of drugs" has not been adjudicated, and he has not been provided with notice or an opportunity to be heard regarding the applicability of § 922(g)(3) to him. Pursuant to Federal Rule of Criminal Procedure 32(e)(2), the Defendant was provided with a presentence report summarizing the results of probation's presentence investigation conducted pursuant to Federal Rule of Criminal Procedure 32(c). The Report notified him of its recommendation that his base offense level be set at 14 because he was a prohibited person at the time of the offense. The Defendant made objections in writing to the presentence report and the base offense level, and probation's subsequent Revised Presentence Investigation Report and Addendum to the Presentence Report

13

explains the Defendant's unresolved objections. After briefing was completed on the Defendant's factual and constitutional challenges to the recommended base offense level, the Court held a conference of counsel to ask the parties whether they wished to have an evidentiary hearing on the issue of whether the Defendant is a prohibited person under § 2K2.1(a)(6). The Court reminded Defendant's counsel that he could introduce his own evidence at the evidentiary hearing to contradict the Government's evidence that the Defendant was using drugs at the time of the straw purchase. Nonetheless, counsel for the Defendant waived an evidentiary hearing and both parties stipulated that the Revised Presentence Investigation Report and the Government's exhibits would constitute the factual record for purposes of the Court's determinations on the Defendant's factual and as-applied constitutional challenges. The Court asked the Defendant at sentencing if he understood his right to an evidentiary hearing to contest the Government's evidence or introduce his own evidence. The Defendant told the Court that he understood his right to a hearing and that he had an adequate opportunity to discuss the matter with his counsel. Defense counsel and the Defendant declined the opportunity to put on evidence to challenge the Government's evidence.

The Defendant has been provided with notice and an opportunity to be heard on whether § 922(g)(3) applies to him and his status as an unlawful drug user has been adjudicated by this Court. The Court concludes that the process that the Defendant has received on the issue of whether he is a prohibited person for

purposes of § 2K2.1(a)(6) is sufficient under the Due Process Clause of the Fifth Amendment.

### 4. Vagueness Challenge

Finally, the Defendant argues that § 922(g)(3) is unconstitutionally vague. "In order to avoid unconstitutional vagueness, courts have held that the critical term 'unlawful user' requires a 'temporal nexus between the gun possession and regular drug use.' Refined further, an 'unlawful user' is one who engages in 'regular use over a long period of time proximate to or contemporaneous with the possession of the firearm.'" *Marceau*, 554 F.3d at 30 (quoting *Edwards*, 540 F.3d at 1162 and *United States v. McCowan*, 469 F.3d 386, 392 n.4 (5th Cir. 2006)). With this narrowing construction, § 922(g)(3) is not unconstitutionally vague. A reasonable person would understand that the Defendant's heroin dependency and use proximate in time to the offense is covered by § 922(g)(3).

## II. CONCLUSION

The Court finds that the Defendant is a prohibited person under § 922(g)(3) and the base offense level is 14 pursuant to USSG § 2K2.1(a)(6). The Court concludes that § 922(g)(3) is constitutional on its face and as applied to the Defendant, the Defendant was not deprived of his Second Amendment right to bear arms without due process of law, and § 922(g)(3) is not unconstitutionally vague.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 17th day of October, 2012.